# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

CARL A. DAVIS, ADC #141860;                                                       PLAINTIFFS
and MARK A. FRANKLIN, ADC #166456

v.                                        No. 5:15CV00079 JLH

EDWARD ADAMS, et al.                                                               DEFENDANTS

## OPINION AND ORDER

This is a prisoner civil rights case brought by two detainees who were housed at the W. C. "Dub" Brassell Adult Detention Center in Jefferson County, Arkansas. On June 5, 2017, all parties appeared and announced ready for a trial to the Court. After two days of testimony, the case is ready for findings of fact and conclusions of law.

## PROCEDURAL HISTORY

Carl A. Davis is an inmate in the Arkansas Department of Correction. Before being transferred to the state prison, he was held in the Jefferson County jail. Mark A. Franklin is also an inmate in the Arkansas Department of Correction. He was held in the Jefferson County jail at the same time as Davis. Davis and Franklin, along with Percy Little, Jr., commenced this action *pro se*[1] by filing a hand-written complaint against Captain Edward Adams, Major Tyra Tyler, and Chief Greg Bolin in their individual and official capacities. The complaint alleged that Davis, Franklin, and Little were victims of an assault by other detainees at the jail. The complaint also alleged that Davis, Franklin, and Little informed the defendants of the danger they faced in advance of the assault, which took place on February 12, 2015. Little's claims were later dismissed without prejudice for failing comply with a Court order. Document #21. In an amended complaint, Franklin

---

[1] The Court subsequently appointed Bettina E. Brownstein to represent Davis and Franklin. The Court thanks Ms. Brownstein for her zealous and exemplary representation of them.

identified Judy Browley as a defendant. She was added as a named defendant, but Davis and Franklin later voluntarily moved to dismiss her as a defendant. The Court granted that motion. Document #88. The witnesses at trial were Davis, Franklin, Tyler, Adams, and Bolin. After all of the evidence had been received, Davis and Franklin moved to dismiss their claim against Chief Bolin. That motion was granted and the claim was dismissed with prejudice. Document #110. Only Davis and Franklin's claims against Captain Adams and Major Tyler remain for the Court to decide.

## THE FACTS

Chief Greg Bolin is the chief administrator at the jail. He answers to the county sheriff but is otherwise principally responsible for the well-being of detainees at the jail. All jail personnel report to Chief Bolin. Captain Edward Adams is the detention captain and chief of security at the jail and is responsible for placement of detainees. He is also responsible for reviewing detainee grievances and administering the disciplinary court. Major Tyra Tyler is the assistant administrator at the jail. Part of Major Tyler's responsibilities include reviewing and investigating detainee complaints and managing the detainee disciplinary program. Chief Bolin, Captain Adams, and Major Tyler all have authority to move detainees within the jail.

The jail has a written grievance policy that is provided to detainees in their handbook. The policy states that "detainees shall have the opportunity to present written grievances without punishment" and that "[w]ritten detainee grievances shall be promptly investigated, promptly answered in writing, and if legitimate, satisfactorily resolved." At the time Davis and Franklin were housed in the jail, detainees filed a grievance by submitting a written form to a jailer at night when the grievances were collected. The grievances were then placed in a box for Captain Adams to review. Detainees were to receive a written response of the resolution of their grievance.

2

Emergency grievances received a written response within 48 hours; all others received a written response within 10 working days from receipt.

The Jefferson County jail has beds for 316 detainees. When a detainee comes to the jail, he is initially housed in the booking area until the jail assigns him to a more permanent area. There are "pods" lettered A through G and other areas known as Misdemeanor 1 and Misdemeanor 2. Davis and Franklin were both housed in the F-pod, the area of the jail in which the incident took place. F-pod has six cells: three cells are in a row on the ground floor and above them are three cells on an upper tier accessible by stairs. Each cell housed eight detainees. The ground-floor cells are numbered 101, 102, and 103, in that order. Similarly, the upper-tier cells are numbered 201, 202, and 203. Outside of the ground-floor cells is a dayroom with tables, a television, and a computer station, manned by a guard, that controls the cell doors. Detainees from the lower and upper tiers were not supposed to be out of their cells and using the dayroom at the same time.

Davis came to the jail in October 2014 awaiting transfer to the Arkansas Department of Correction. He was taken from booking to the F-pod and assigned to cell 102 with Percy Little, his cousin. Franklin also came to the jail in October 2014. Unlike Davis, Franklin was a pretrial detainee waiting to face charges. Franklin was first assigned to Misdemeanor 2. He was later moved to F-pod and assigned to cell 203.

On January 10, 2015, while Franklin was in cell 203, he was "jumped" by cellmates Marquis Johnson, Jossinni Johnson, and Corey Okey. Franklin testified that they wanted the items he had purchased from the commissary. The next day, Franklin wrote grievances regarding the incident. The grievances do not specifically identify the cellmates but state that they covered the cameras before stealing items he had purchased from the commissary. Franklin requested his property back

3

and that he be moved to a different pod for his safety.  On January 12, Franklin wrote a grievance to Captain Adams in which he named Jossinni Johnson and Corey Okey as participants in the incident.  On January 15, Franklin wrote an emergency grievance to Major Tyler requesting a move for his safety because he felt retaliated against.  He addressed a similar emergency grievance to Chief Bolin.  Franklin was moved to cell 102 in the F-pod.  He, Davis, and Percy Little were all in cell 102 at this time.  After the fight on February 12, which will be discussed below, Chief Bolin granted Franklin's request to be moved to Misdemeanor 1.  When Captain Adams realized that Jossinni Johnson was also in Misdemeanor 1, he moved Franklin to A-pod.  He testified that he did so because Franklin and Johnson were enemies and had gotten into it before.

Everything that follows is the lead-up to and description of a fight between detainees that took place on February 12—the incident at the heart of this case.  Davis and Franklin testified that they began receiving threats from other detainees who were members of a gang.  The threats were verbal as well as written.  Davis is a large man.  He testified that the leaders of the gang wanted him to join their gang, but he refused, so they threatened him.  Franklin testified that he would receive "kites"—notes sent by detainees to each other—threatening him and Davis.  He testified that the threats against him eventually ceased, and he was told that the other detainees only had a problem with Davis and no longer with him.

The leaders of the gang were in cells in the upper tier of F-pod, but some gang members were housed in cells in the lower tier.  None, however, was housed in cell 102.

On the evening of February 1, 2015, detainees from the upper-tier cells were in the dayroom while the detainees in cells 101, 102, and 103 remained locked in their cells.  It was Super Bowl Sunday.  Two cameras record different angles of the pod and capture the scene.  Many of the

4

detainees who were out of their cells were sitting at or standing near the tables in front of the television watching the game. There was a single guard in the room, Deputy Johnny Dorn, who can be seen enthusiastically watching the game as well. He stood among the detainees watching the game, cheering, jumping and running around the dayroom. Occasionally he walked back to the computer station. Most of the time, however, Dorn's back was to the computer station.[2] A detainee remained near the computer station throughout the recording, even when Dorn occasionally returned. The detainee periodically reached over the station and touched the computer. Another detainee later joined him and did the same thing. Davis identified the first detainee as Sammuel Kimmons and the one who later joined Kimmons as Marquis Johnson. The jail roster shows that these detainees were assigned to cell 203 and that Johnson was supposed to be on lockdown in his cell. At least five times, a detainee can be seen reaching over the computer station and touching the computer. Davis and Franklin testified that these detainees were unlocking the lower-tier cell doors so that they could get into Davis and Franklin's cell to harm them. They testified that their door was unlocked by other detainees at other times as well.

Dorn filed an incident report for use of force on the evening of February 1, 2015. He stated that a detainee unlocked the cell doors to 102 and 103 while his back was turned to his computer. This allowed detainee Courtland King, who was on lockdown in 103, to run out of his cell. Dorn stated that he used the amount of force needed to restrain King and return him to his cell. He reported that he then secured cells 102 and 103. Dorn did not identity the detainee who unlocked

---

[2] Dorn was discharged on October 26, 2016, after several incidents of neglect of duty. The incident on February 1, 2015, is the first such incident reflected in his personnel file. He was given a verbal warning for neglect of duty as a result of the February 1 incident. Dorn was not on duty in F-pod when the February 12 fight occurred.

5

the cell doors. The recording introduced as an exhibit at trial did not include the incident reported by Dorn.

Captain Adams testified that he reviewed Dorn's incident report and the recordings from the February 1 incident when he returned to work on Monday or Tuesday, February 2 or 3. Captain Adams was unable to identify which detainees were unlocking the cell doors. He asked two detainees mentioned in Dorn's incident report if they were responsible, and they denied it, but he did not further investigate who might be. Although his testimony was equivocal, at trial Captain Adams said that he did not discipline any detainee relating to the February 1 incident. He testified that he was unable to determine from the recordings whether the detainees by the computer actually unlocked the cell doors. However, in response to a grievance by Little on February 13, Judy Browley, Adams's assistant, wrote that the detainees involved in unlocking the cell doors on February 1 were disciplined. Davis and Franklin requested these disciplinary records in discovery, but none was produced.

It is clear that detainees unlocked Davis and Franklin's cell door on the evening of February 1, 2015. Dorn's incident report and the testimony of Davis and Franklin are consistent in that respect. The recordings do not show what the detainees by the computer were touching or that a cell door actually opened, but it is evident that the detainees by the computer were reaching over the computer station and pressing something.

Both Davis and Franklin testified that before February 12 they wrote grievances regarding the February 1 incident. Two grievances written by Franklin predating February 12 and pertaining to the February 1 incident were presented at trial. One was written on February 3, 2015, and the other on February 7, 2015. In those grievances, Franklin expressed concern that detainees were

6

unlocking cell doors and requested that he be moved to Misdemeanor 1 for his safety. Davis and Franklin claim that they wrote other grievances that were never returned to them asking to be moved to a different pod because they felt unsafe. Davis and Franklin have not produced any additional grievances relating to the February 1 incident that predate February 12. Several detainees in cell 102 signed a statement after the February 12 fight saying that Little had submitted a grievance before the fight about the February 1 incident. Davis and Franklin also wrote grievances after the fight saying that they had submitted grievances about the February 1 incident before the February 12 fight. Those grievances have not been produced.

Franklin wrote several grievances during his time at the jail that have been preserved. As mentioned above, Franklin's January 15, February 3, and February 7 grievances included requests to be moved for his safety. It is difficult to believe that other detainees in the same cell gave their grievances to the same guards for processing through the same system—grievances purportedly relating to the same issue and making the same request as Franklin's February 3 and 7 grievances—but all of them were lost except for Franklin's. Still, Franklin and Davis both have records of complaining about unreturned and unanswered grievances. Franklin has grievances predating the February 1 incident in which he complains that some of his grievances were not coming back to him. He also made a similar complaint in his February 3 grievance. Davis wrote a grievance after the fight on February 12, saying that he warned of the threat to his and Franklin's safety in a grievance on February 1. Moreover, one of Franklin's grievances that he filed on January 15, asking to be moved for his safety, was misfiled and did not receive a response until February 19, 2015.

Davis may have written grievances regarding the February 1 incident that have been lost, but assuming that he did so changes little about what Captain Adams and Major Tyler knew. Davis testified that he did not know whether any grievance he wrote reached Adams. He testified that he never spoke to Adams about the threats, though he asked Adams to move him back to booking. Davis did not testify that he had any communication with Tyler until he wrote a grievance after the February 12 fight. In Davis's February 12 grievance, he wrote that on February 1 Marquis Johnson had unlocked cell doors in order to let Cedric Howe and Mashadric Chaney out of their cells.[3] Davis said that these detainees planned to "jump" him, Franklin, and Little.

Captain Adams and Major Tyler were aware of the February 1 incident. Both testified that they knew about the incident within days of it happening. Major Tyler responded to each of Franklin's grievances on February 3 and 7. On the February 3 grievance, Major Tyler wrote "No, who are your enemies?" next to Franklin's request to move to Misdemeanor 1 for safety reasons. On the February 7 grievance, Franklin did not name names, but he did give additional identifying information regarding his enemies. For example, he wrote that "[t]wo of the people that jumped me [in the January 10 incident] are still upstairs and used the computer to pop my door open to fight." He also stated that he had enemies on the lower tier, but he did not name them. Major Tyler responded to this grievance saying that "Capt. Adams advised you can either stay in F pod or move to A pod." She testified that before she responded to the February 7 grievance that she had viewed the recordings with Captain Adams. She also testified that she knew that there were detainees in F-pod who were threatening Davis and Franklin's cell. Tyler testified, however, and Franklin

---

[3] Marquis Johnson, Cedric Howe, and Mashadric Chaney were on lockdown. According to Captain Adams, detainees on lockdown are not supposed to be out of their cells at anytime.

8

confirmed, that he refused to give her the names of his enemies. Tyler testified that without names or some identifying information of a detainee's enemies, she cannot take appropriate steps to protect him. Franklin testified that he told Captain Adams the names of the detainees with whom he had fought in the upper tier, but he did not testify that he told Captain Adams the names of any detainee on the lower tier whom he regarded as dangerous to him.

Captain Adams testified that he reviewed Dorn's incident report and the recordings from the incident shortly after it took place. Dorn's incident report expressly states that detainees unlocked Davis and Franklin's cell door. Captain Adams also testified that he knew Franklin had fought with detainees in the upper tier of F-pod on January 10. As mentioned above, when Chief Bolin moved Franklin to Misdemeanor 1, Captain Adams moved Franklin to A-pod because Jossinni Johnson was also in Misdemeanor 1 and they had fought on January 10.

After investigating the February 1 incident, Major Tyler and Captain Adams knew that detainees from the upper-tier cells unlocked Davis and Franklin's cell. They knew that Franklin said that detainees in F-pod were threatening Davis and Franklin's cell, that he felt unsafe, and that he had previously fought with detainees from the upper-tier cells during the January 10 incident. Franklin had not, however, identified anyone on the lower tier whom he deemed a threat to his safety. The jail had a policy that prohibited detainees in the upper- and lower-tier cells from using the dayroom at the same time. And of course, jail policy also prohibited detainees from unlocking cell doors and dictated that the guard on duty was to prevent detainees from unlocking cell doors. Major Tyler testified that detainees should have been moved after the February 1 incident for their safety, but she also testified that she deferred to Captain Adams on such questions because she did not work "in the back" enough to know who is an enemy of whom. Captain Adams, as chief of

9

security, was the officer whose duty it was to investigate the February 1 incident. He did not appear to share Major Tyler's opinion that some detainees should have been moved for safety reasons after February 1. He testified that there was no fight on February 1, that no one was hurt, "and that was it."

Had the jail policy been followed, the computer station would not have been left unattended and detainees would not have been able to unlock cell doors. Because the upper and lower tiers were prohibited from being in the dayroom at the same time and because detainees on lockdown are prohibited from being out of their cells at any time, the jail policy, when followed, protected Franklin and Davis from the detainees they claim threatened them on February 1.

On the evening of February 12, 2015, a fight broke out in the F-pod. Detainees from the lower-tier cells were using the dayroom when the fight broke out. Detainees in the upper-tier cells were locked in their cells, with the exception of Cedric Howe. Howe was supposed to be on lockdown in cell 201. Somehow, he was in cell 103 and able to access the dayroom. As with the February 1 incident, two cameras recorded the event. Below is a timeline and description of the fight based on combining views from the two cameras:

| | |
|---|---|
| 10:25 p.m. | The recording starts. Percy Little [Davis's cousin] is pacing and gesturing in the dayroom of F-pod, while other detainees are playing cards, watching television, talking on the telephone, and the like. Carl Davis and Mark Franklin are inside 102. |
| 10:26:45 | Little opens the door to 103. Davis testified that Little was telling Cedric Howe[4] to come out since he wanted to fight Davis. |

---

[4] Davis testified that Howe was the gang's "enforcer," meaning that he would fight whomever the gang leader directed him to fight. On the recording, Davis appears to be much heavier than Howe.

| | |
|---|---|
| 10:26:47 | While Little is holding the door to 103 open, Davis and Franklin emerge from 102. The door to 103 is then closed. Franklin stands in the door to 102. Davis walks around in dayroom. |
| 10:27:10 | The guard on duty, Carl Nelson, opens the door to 103 and appears to be speaking to someone inside. |
| 10:27:15 | Davis speaks to Little and both start toward 102. |
| 10:27:22 | Detainee Douglas Porter emerges from 103. Davis is in 102. Little is at the door to 102, and Franklin is in the dayroom near Little. |
| 10:27:25 | Porter says something to Little. Little takes two steps toward Porter and strikes him. Porter and Little are both swinging fists. |
| 10:27:28 | Another detainee joins the fight to hit Little. |
| 10:27:30 | Davis tries to separate the second detainee and Little, grabbing the second detainee. |
| 10:27:32 | Franklin approaches the fight and is struck from behind. |
| 10:27:35 | Cedric Howe and Little are fighting near 102. |
| 10:27:37 | Davis heads toward them and swings at or grabs Howe as Howe grasps Little around the waist and attempts to take him to the floor. Several detainees jump on Davis from behind, throwing punches. Two groups of detainees fight near the cells. |
| 10:27:49 | A second guard comes through a door to the left of the camera and the fighting stops briefly. |
| 10:27:53 | Little crosses the room and attacks again. Another skirmish starts in the middle of the dayroom. |
| 10:27:58 | Howe attacks Davis from behind in the dayroom. |
| 10:28:02 | Davis pushes, punches, and slings Howe to the corner. Little chases Howe into the corner to the right of the camera where the two of them exchange blows. Two detainees attempt to restrain Little. |

11

| | |
|---|---|
| 10:28:10 | A third guard enters through the left door.[5] |
| 10:28:15 | The fight is broken up. |
| 10:28:17 | A guard orders Little to leave the pod. |
| 10:28:25 | Davis returns to cell 102. |
| 10:28:49 | Little is forcibly removed through the left door by two guards. Davis has exits his cell and helps remove Little. Franklin returns to cell 102. Only one guard (Nelson) is left. |
| 10:29:02 | Davis and another detainee (Mashadric Chaney) square off. Porter and another detainee circle around Davis. |
| 10:29:08 | Davis lunges toward Chaney and strikes him. Other detainees take Chaney's side. Davis fights a group of detainees. Franklin exits cell 102 and heads toward Davis. |
| 10:29:17 | Franklin attempts to intervene and is attacked. |
| 10:29:20 | Davis and Howe are in the corner to the right fighting. |
| 10:29:30 | Franklin is removed from the fight by four or five detainees. |
| 10:29:33 | Three or four detainees return to the corner to help Howe. |
| 10:29:34 | A guard returns through the left door. |
| 10:29:37 | Franklin starts back to the fight and is stopped by the guard who has just returned. |
| 10:29:41 | Davis and Howe are separated. A guard is there. |
| 10:29:45 | Howe is bent over covering his face. The report by Lt. Williams says that he sprayed Howe in the face with his OC spray. |
| 10:29:49 | While Howe is bent over covering his face, Davis gives him an uppercut to the face. Howe staggers toward a door to the right of the camera and is surrounded by detainees who had been fighting on his side. |

---

[5] The two guards who assisted Nelson were Corporal Nehemiah Buffkin and Lieutenant Roger Williams.

| | |
|---|---|
| 10:29:37 | Another guard returns through the left door. |
| 10:30:40 | A guard orders Davis out. |
| 10:30:45 | The guards start taking Davis out. |
| 10:31:02 | A detainee taunts Davis. Davis steps toward the taunting detainee and wants to fight again but is forcibly restrained by the guards. |
| 10:31:14 | Franklin voluntarily leaves F-pod area. |
| 10:31:10 | Davis is forcibly removed through the left door. |
| 10:31:38 | Porter and others gesture at detainees in cell 102. |

The recordings show that Little was the initial aggressor. According to Davis, when Little opened the door to 103, he did so to challenge Howe to come out and fight Davis. Then, Little started the fight by throwing the first punch at Porter. After a brief skirmish, the detainees separated and there was a lull in the fight. The lull was interrupted when Little crossed the room and attacked again, making him the aggressor for the second time. After Davis slung Howe toward a corner, Little followed him to continue the fight. After Little was removed from F-pod, Davis squared off against Chaney, who was joined by two additional detainees. Davis was the aggressor then—he struck Chaney and started what amounts to the third skirmish. When the two guards who had removed Little returned to F-pod, they again broke up the fight, using OC spray, which struck Howe in the face. While Howe was bent over covering his eyes with his hands due to having been sprayed in the face, Davis hit him with an uppercut.

In summary, either Little or Davis was the aggressor on each occasion when fighting started.

Franklin was not an aggressor or a target during the fight. He attempted to intervene twice and was attacked both times. He was not attacked unless he attempted to intervene, and for much

13

of the fight, he stood by and watched. So long as he stood back, he was not molested. The recordings confirm Franklin's testimony that the other detainees were not after him.

The recordings of the fight on February 12 show that Little and Davis fought against a group, which supports Davis and Franklin's testimony that those detainees were members of a gang. Captain Adams and Major Tyler, however, deny being informed that there was any gang activity in F-pod, and there is no evidence that they were so informed before the February 12 fight.

When asked on direct examination if he sustained injury as a result of the fight, Davis testified that he had a cut above his eye and "a busted nose." When asked whether there was anything else, he said that was it. When asked how he is now, he said that he has a little blurry vision but is alright. Franklin testified that he suffered a broken finger as a result of the fight and that he had headaches and blurred vision for some time thereafter. The only treatment that he had, apparently, was an ice pack for a pulled muscle. Neither Davis nor Franklin introduced medical records showing serious or long-lasting injury as a result of the fight.

## THE LEGAL STANDARDS GOVERNING THIS CASE

Prison and jail officials have a duty to protect detainees from other detainees. *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994). This duty arises under the eighth amendment's prohibition of cruel and unusual punishments. *Id.* Not every injury suffered by one detainee at the hands of another gives rise to constitutional liability by a prison official. *Id.* at 834, 114 S. Ct. 1977. For a claim based on a failure to prevent harm, the inmate first "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* Second, the official must have been "deliberately indifferent" to inmate safety. *Id.* An official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate

health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S. Ct. at 1979. If an official responds reasonably to a known and substantial risk, the official will not be held liable even if the harm posed by the risk was not averted. *Id.* at 844, 114 S. Ct. 1982-83.

Davis and Franklin's constitutional rights governing their treatment at the jail arise under different constitutional provisions. As a pretrial detainee, Franklin's right arises under the due process clause of the fourteenth amendment. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed.2d 605 (1983). Davis, though, was not a pretrial detainee; he had already been convicted. His right, therefore, arises under the eighth amendment. *See Farmer*, 511 U.S. at 832, 114 S. Ct. at 1976. In the Eighth Circuit, this difference is immaterial, and both Davis and Franklin's claims are analyzed under *Farmer*'s objective-subjective standard. *See Walton v. Dawson*, 752 F.3d 1109, 1117-18 (8th Cir. 2014).

## CONCLUSIONS BASED ON THE FACTS AND THE GOVERNING LAW

Davis and Franklin have not shown that Captain Adams or Major Tyler knew that they faced substantial risk of serious harm and deliberately disregarded it. Threats between inmates are common and do not always establish that a prison official has actual knowledge of a serious risk of harm. *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998). That detainees from the upper-tier cells unlocked the door to cell 102 on February 1 is insufficient to show that Captain Adams and Major Tyler knew of a serious risk to detainee safety that they deliberately disregarded. It was Captain Adams's responsibility to investigate the February 1 incident, not Major Tyler's, and he did so, albeit not very thoroughly. Although the investigation by Captain Adams was not as thorough as it should have been, negligence, alone, is insufficient to impose liability. Captain Adams did not

15

conclude that the February 1 incident showed that some detainees needed to be moved for safety reasons. The detainees who were responsible for unlocking the doors on February 1, though not specifically identified by Captain Adams, were housed in the upper-tier cells. Under jail policy, they were to be segregated from Davis and Franklin at all times. Captain Adams and Major Tyler could reasonably rely on this jail policy in estimating the risk to Davis and Franklin. Neither of those two detainees participated in the February 12 fight. There is no evidence that after February 1, detainees from the upper tier were allowed access to the computer station where they could open the doors to the cells on the lower tier. The deputy responsible for the February 1 incident, Johnny Dorn, was verbally warned as a result of the February 1 incident, and he was not on duty in F-pod when the February 12 fight occurred.

With the exception of Cedric Howe, all of the detainees involved in the fight were from the lower tier. Davis and Franklin testified that detainees in the lower-tier cells were in a gang with detainees in the upper-tier cells and were making threats to them leading up to the February 12 fight. No evidence shows that Captain Adams or Major Tyler knew of gang activity in F-pod. Nothing in the February 1 recordings or Franklin's grievances leads to the conclusion that Captain Adams or Major Tyler knew that Davis and Franklin were in danger from detainees in the lower tier and deliberately disregarded that danger. Franklin's February 7 grievance mentions his enemies in the upper-tier cells from the January 10 incident and says that he has enemies on the lower tier, but that grievance did not identify the alleged enemies housed in the lower tier. Franklin admitted that Tyler interviewed him and he declined to identify the persons who were threatening him. Nor did he testify that he informed Captain Adams of the names of persons on the lower tier whom he deemed a danger to him. No one involved in the January 10 fight with Franklin was involved in the

16

February 12 fight. Davis's February 12 grievance about the February 1 incident lists detainees Cedric Howe, Mashadric Chaney, and Marquis Johnson. Each of these detainees was supposed to be separated from Davis and Franklin: Chaney and Howe because they were on lockdown, and Johnson and Howe because they were in the upper-tier cells. Davis, moreover, did not testify that he gave Captain Adams or Major Tyler the names of anyone who threatened him before February 12. Indeed, he did not testify that he reported any threats to them.

This is not a case in which a detainee was alone in a locked cell with a detainee whom prison officials knew to be his enemy. The fight on February 12 occurred in the dayroom, not in a locked cell where guards could not see and intervene. Although only one guard, Carl Nelson, was in the dayroom with the detainees, he was able to call additional guards to come and assist in breaking up the fight. Two additional guards—Williams and Buffkin—came twice and broke up the fight promptly each time. The recording of the entire incident is barely more than six minutes—from 10:25 p.m., to 10:31:38 p.m. The first skirmish lasted from 10:27:25 to 10:27:49—twenty-four seconds. The second skirmish lasted from 10:27:53 to 10:28:15—twenty-two seconds. The third skirmish lasted from 10:29:08 to 10:29:41—thirty-three seconds. Not counting the uppercut thrown by Davis against Howe while Howe was bent over with his eyes covered, the fighting consumed a total of seventy-nine seconds. No weapons were used. No one was seriously hurt. Although the evidence does not show that Major Tyler or Captain Adams had reason to know that a fight would occur in the F-pod dayroom, it appears that the jail administration had a plan and resources for protecting detainees should a fight occur; and the plan worked. Guards responded properly and broke up the fight—twice. No one was seriously injured.

It cannot be ignored that the fight on February 12 was started by Little, who is Davis's cousin. Neither Franklin nor Davis testified that Captain Adams and Major Tyler knew that Little intended to start a fight. Davis and Little were the aggressors in the fight. Prison officials cannot be charged with preventing a detainee from being injured in a fight when that detainee, or someone working closely with him, starts the fight.

Davis and Franklin have moved the Court to draw a negative inference based on the defendants' failure to produce the "disciplinary reports for the detainees who were 'popping' the doors." Davis and Franklin argue that the defendants intentionally withheld these documents and that the documents would have helped demonstrate that the defendants were aware of the risks to them. If true, the defendants' conduct would constitute spoliation of evidence. Before sanctioning the defendants for spoliation, the Court must find that they intentionally destroyed or withheld evidence and that their doing so prejudiced the plaintiffs. *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007).

Even if Davis and Franklin could show that the defendants intentionally destroyed or withheld disciplinary records relating to the February 1 incident, they have not demonstrated that the absence of such records has prejudiced them. Davis and Franklin argue that Kimmons and Johnson must have been disciplined as a result of the February 1 incident and that, based on jail policy, they must have been interviewed as a part of the disciplinary process. Davis and Franklin surmise that Kimmons and Johnson would have disclosed their motives for unlocking the cell doors, which would have put Captain Adams and Major Tyler on notice that Kimmons and Johnson's motive in unlocking the cell doors was to arrange an attack on them.

The evidence fails to prove that Kimmons and Johnson were disciplined as a result of the February 1 incident. Adams's testimony was equivocal, but he ultimately testified that he did not believe that he disciplined anyone as a result of that incident because he could not identify the two detainees involved from the video. Furthermore, the detainee rosters for F-pod on February 1, 2015, and February 12, 2015, identify the detainees who were on lockdown with bold print followed by "L/D." The roster for February 12, 2015, shows that Kimmons and Johnson were housed in cell 203 on February 12; neither was on lockdown at that time. Had they been disciplined subsequent to February 1, it is likely that they would have been moved to a punitive isolation cell or placed on lockdown on February 12.

Even if they had been disciplined, and even if they had been interviewed, it would be quite a stretch to assume that in their interviews they disclosed an intent to attack detainees in cell 102. If they did not disclose such an intent, the absence of the disciplinary reports would not have prejudiced Davis and Franklin in this case.

## CONCLUSION

Franklin's claim fails because he cannot show that he was in serious risk of substantial harm on February 12 when the fight occurred. He testified that before February 12 he had been told that the gang members wanted to fight Davis, not him. The video confirms that Franklin was not a target. He was struck only when he attempted to intervene. So long as he stood back, no one attempted to harm him.

Davis cannot show that he put Major Tyler or Captain Adams on notice that he was in a substantial risk of serious harm. He did not testify that he told either of them before February 12 that he had been threatened. Furthermore, the gang members whom Davis says were a threat to him

19

did not start the fight. Davis's cousin, Little, challenged the gang's enforcer, Howe, to come out of cell 103 into the dayroom and fight Davis. Little then started the fight by striking Porter. Either Little or Davis was the initial aggressor in each skirmish. That Davis took some blows during this fight cannot be blamed on Major Tyler or Captain Adams.

A judgment in favor of the defendants will be entered separately.

IT IS SO ORDERED this 20th day of June, 2017.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE